IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| XANITOS, INC. ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> AMERICAN HEALTHCARE SYSTEMS, ) <br> ILLINOIS, LLC, ) <br> ) <br> Serve: REGISTERED AGENTS INC. ) <br>         2501 CHATHAM RD, SUITE R ) <br>         SPRINGFIELD, IL 62704 ) <br> ) <br> **Defendant.** ) | Case No. _____ |

## COMPLAINT

COMES NOW Plaintiff Xanitos, Inc. ("Xanitos") by and through undersigned counsel, and for its Complaint against American Healthcare Systems Illinois LLC, hereby alleges as follows:

### Nature of the Action

1. In this action, Xanitos seeks damages and declaratory relief based on Defendant's breach of contract and unjust enrichment as Defendant has failed to pay for services rendered by Plaintiff pursuant to a Master Service Agreement.

### Parties

2. Plaintiff Xanitos, Inc. is a corporation organized under the laws of the state of Delaware with its principal place of business in Delaware County, Pennsylvania.

3. Defendant American Healthcare Systems Illinois, LLC is an Illinois limited liability company organized under the laws of the state of Illinois. Upon information and belief, American Healthcare's principal place of business is located in Madison County, Illinois.

1

4. Venue is proper in this Court because American Healthcare's principal place of business is located in Madison County, Illinois and the services performed pursuant to the contract at issue took place in Madison County, Illinois.

5. Jurisdiction is proper in this Court under 28 USC 1332 because the parties are completely diverse:

   a. Xanitos' principal place of business is located in Delaware County, Pennsylvania, and is incorporated in Delaware;

   b. American Healthcare's principal place of business is located in Madison County, Illinois, and is incorporated in Illinois;

   c. Upon information and belief, Mike Sarian, the sole member of and manager of American Healthcare is a resident of Glendale, Los Angeles County, California;

   d. The amount in controversy exceeds $75,000.

## The Master Service Agreement

6. On April 14, 2015, Plaintiff Xanitos, Inc. and CHSPSC, LLC ("CHS") entered into a Master Service Agreement ("2015 MSA") wherein Xanitos was to provide environmental services, linen distribution, and patient transportation services at CHS hospitals in exchange for payment from CHS.

7. In early 2015, CHS announced that its plan to create a new publicly traded hospital company by spinning off to CHS's stockholders a group of 38 hospitals that resulted in the creation of a stand-alone, publicly-traded company, Quorum Healthcare Corporation ("QHC").

8. On February 25, 2016, Xanitos and QHC entered into a Master Service Agreement ("2016 MSA") wherein Xanitos was to provide environmental services, linen distribution, and patient transportation services at these now QHC hospitals in exchange for payment from QHS.

9. The February 25, 2016 MSA served to supersede the April 14, 2015 MSA.

10. Section 2.8 of the 2016 MSA states as follows:

> Non Payment. In the event that Client does not pay any invoice on or before the due date, Client agrees to pay interest at the rate of one and one-half percent (1.5%) per month (provided that if such rate exceeds the maximum permitted by law, then the highest lawful rate) on all outstanding invoices until VENDOR receives payment in full. VENDOR may, after providing fourteen (14) days prior written notice, terminate the Client's SOW or suspend the performance of Services, with respect to that specific Client only, unless all outstanding amounts are paid within the notice period.

11. Section 4.5 of the 2016 MSA states as follows:

> Early Termination Payment: The Parties agree that VENDOR has incurred a substantial investment in order to provide service to Clients and that VENDOR will suffer significant damage that will be difficult to calculate if a SOW is terminated prior to the completion of the second year of the SOW Term, as applicable. Therefore, in the event a SOW is terminated for any reason other than by Client pursuant to Sections 4.2 or 4.3 or by Vendor pursuant to Section 4.4. of this Agreement, prior to completing two (2) years of the SOW Term, Client shall make an early termination payment to VENDOR ("**Early Termination Payment**"). The Early Termination Payment shall be calculated by multiplying the number of weeks remaining in the initial twenty-four (24) months of the SOW, as of the date of termination multiplied by the immediately preceding twenty-six (26) week average weekly revenue; the result shall then be multiplied by forty percent (40%) which shall be the Early Termination Payment. The Parties agree that the amounts set out in this Section 4.5 are a reasonable assessment and reimbursement of the damages that VENDOR incurs and are not intended as a penalty.

12. On February 21, 2022, a Statement of Work was entered into ("2022 SOW") which pertained to one specific location, Granite City Illinois Hospital Company, LLC d/b/a Gateway Regional Medical Center ("Gateway.")

13. The 2022 SOW is governed by and incorporates by reference the 2016 MSA.

14. The 2022 SOW provided for payments to be made bi-weekly to Xanitos in the amount of $66,363.19.

15. This 2022 SOW was to be in effect from March 1, 2022 through March 1, 2025.

16. Pursuant to the 2022 SOW, the bi-weekly payments increased to $71,694.92 beginning on January 1, 2023.

## The Assignment

17. On March 1, 2023, American Healthcare Systems ("American Healthcare") purchased QHC.

18. As part of this purchase, American Healthcare acquired Gateway.

19. On March 1, 2023, QHC entered into an Assignment and Assumption Agreement (hereinafter "Assignment") with American Healthcare.

20. As part of the Assignment, American Healthcare took over for QHC as a party to the 2016 MSA and the 2022 SOW.

21. In accordance with the terms of the 2016 MSA and the 2022 SOW, American Healthcare is to pay Xanitos bi-weekly for the services outlined therein.

22. American Healthcare paid for the services pursuant to the 2022 SOW from March 1, 2023 to March 10, 2023.

23. After March 10, 2023, payments ceased.

24. On June 8, 2023, Plaintiff sent Defendant a Slow Payment Notification Letter ("June 8, 2023 Letter.")

25. In the June 8, 2023 Letter, Plaintiff outlined the summary of the past due invoices totaling $501,864.44 in past due amounts, plus interest of $12,546.63 covering the time period of March 11, 2023 to June 8, 2023.

26. The June 8, 2023 Letter also outlined the early termination penalty pursuant to Section 4.5 of the 2016 MSA.

27. The June 8, 2023 Letter also provided fourteen (14) days' notice for termination pursuant to Section 2.8 of the MSA.

28. On June 20, 2023, Plaintiff made a payment of $30,000 for past invoices.

29. On June 24, 2023 Plaintiff sent Defendant a second letter advising that at the close of business on June 23, 2023—the conclusion of the 14 days—Defendant had not yet cured the breach or made current on outstanding payments ("June 24, 2023 Letter.")

30. In the June 24, 2023 Letter, Plaintiff advised that the 2022 SOW would be terminated and services discontinued effective 11:59 pm CST on Friday June 30, 2023.

31. As of the date of the June 24, 2023 Letter, Defendant was past due on eight (8) invoices, totaling $510,553.69.

32. The interest for that amount totals $17,816.20, which is calculated at the rate of 1.5% per month per Section 2.8 of the MSA.

33. Pursuant to Section 4.5 of the MSA, as of the date of the June 24, 2023 Letter the early termination penalty amounted to $497,057.23.

34. As of June 30, 2023, the total past due amount for services rendered pursuant to the 2022 SOW will be $568,438.29.

35. As of June 30, 2023 the interest due on the past due invoices will be $17,816.20.

36. As of June 30, 2023, pursuant to the MSA, Defendant will receive a Labor Reconciliation Credit in the amount of $27,884.60.

37. As of the filing of this Complaint, Defendant has not made efforts to become current on the past due invoices aside from the $30,000 payment.

## Count I – Breach of the Master Service Agreement

38. Plaintiff Xanitos incorporates the allegations set forth in Paragraphs 1-37 above as if fully set forth herein.

39. Xanitos has fully performed its obligations under the 2016 MSA and 2022 SOW.

40. Notwithstanding Xanitos' performance of its duties, Defendant American Healthcare has failed to perform its obligations by failing to pay bi-weekly installments.

41. In failing to pay the invoices sent pursuant to the 2022 SOW, American Healthcare has breached the 2016 MSA.

42. In failing to pay the invoices sent pursuant to the 2022 SOW timely, American Healthcare has breached the 2016 MSA.

43. As a result of Defendant American Healthcare's breach, Xanitos has suffered and continues to suffer damages.

44. Upon information and belief, $1,025,427.13 remains outstanding and is rightly owed and collectable from Defendant. This includes $568,438.29 in past due balances, $17,816.20 in interest, $497,057.23 in early termination penalty, minus the payment of $30,000 and the credit of $27,884,60.

45. Section 13.8 of the 2016 MSA states as follows:

> Legal Fees. In the event that either Party resorts to legal action to enforce the terms and provisions of this Agreement, the prevailing Party shall be entitled to recover the costs of such action so incurred, including, without limitation, reasonably attorney's fees.

46. As outlined above, American Healthcare breached the 2016 MSA and the 2022 SOW.

47. American Healthcare's breach required Xanitos to bring this instant action.

48. As a result of American Healthcare's breach and Xanitos' need to bring this lawsuit, Xanitos is entitled to its legal fees including reasonable attorney's fees.

WHEREFORE, Plaintiff Xanitos, Inc. prays the Court enter Judgment in its favor and against Defendant American Healthcare Systems Illinois, LLC, as follows:

(1) Finding that American Healthcare Systems Illinois, LLC breached the 2016 Master Service Agreement and the 2022 Statement of Work;

(2) Declaring that $568,438.29 in invoices remain past due, outstanding, and unpaid;

(3) Declaring that $17,816.20 in interest is recoverable under the 2016 Master Service Agreement and the 2022 Statement of Work;

(4) Declaring that an early termination penalty in the amount of $497,057.23 applies and remains outstanding;

(5) Awarding Xanitos, Inc damages in the amount of $1,025,427.13, and all recoverable costs, expenses, and attorneys fees incurred herein;

(6) Awarding Xanitos, Inc. pre-judgment and post-judgment interest pursuant to 28 U.S.C. 1961, and all recoverable costs, expenses, and attorneys fees incurred herein;

(7) Awarding Xanitos, Inc. its reasonable attorneys' fees;

(8) Such other relief as the Court deems to be just and equitable.

## **Count II – Unjust Enrichment against Defendant**

49. Xanitos incorporates the allegations set forth in Paragraphs 1-48 above as though fully set forth herein.

50. Defendant American Healthcare benefitted from the services rendered by Xanitos pursuant to the 2016 MSA.

51.	Defendant American Healthcare knows and appreciates the benefits they have received from the services rendered by Xanitos pursuant to the 2016 MSA.

52.	Defendant American Healthcare accepted the benefit of the 2016 MSA but failed to pay for those services rendered.

53.	The benefit of the services rendered by Xanitos under the 2016 MSA was wrongfully secured by Defendant or was otherwise passively received by Defendant.

54.	It would be inequitable and unconscionable to allow Defendant to benefit from the services rendered by Xanitos pursuant to the 2016 MSA without payment in full of those services' value as well as interest.

WHEREFORE, Plaintiff Xanitos, Inc. prays the Court enter Judgment in its favor and against Defendant American Healthcare Systems Illinois, LLC, as follows:

(1) Finding that Defendant American Healthcare Systems has been unjustly enriched by their receipt of the benefit of the services outlined in the 2022 Statement of Work without payment of the full amount due and owed for such services;

(2) Awarding Xanitos, Inc. damages in the amount of $1,025,427.13, and all recoverable costs, expenses, and attorneys fees incurred herein;

(3) Awarding Xanitos, Inc. pre-judgment and post-judgment interest pursuant to 28 U.S.C. 1961, and all recoverable costs, expenses, and attorneys fees incurred herein;

(4) Awarding Xanitos, Inc. its reasonable attorneys' fees;

(5) Such other relief as the Court deems to be just and equitable.

Respectfully submitted,

/s/ Jonathan B. Morrow
Jonathan B. Morrow IL #
Killian R. Walsh IL #6328908
319 N. 4th Street, Suite 300
St. Louis, MO 63102
Telephone: (314) 690-4757
Facsimile: (816) 396-6233
Email: jmorrow@knightnicastro.com
      walsh@knightnicastro.com

**ATTORNEYS FOR PLAINTIFF**